UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DOROTHY GUINAN, )<br>    Plaintiff, )<br>)<br>vs. )<br>)<br>BOSTON COLLEGE, JAMES P. )<br>MCINTYRE, and TRACEY LAPAN, )<br>    Defendants. )<br>_____) | C.A. NO.:  05-10805DPW |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS'**
**<u>MOTION FOR SUMMARY JUDGMENT</u>**

Now comes the Plaintiff Dorothy Guinan ("Guinan") and opposes the Defendants' Boston College, James McIntrye ("McIntrye") and Tracy Lapan ("Lapan") Motion for Summary Judgment.  As reasons therefore, Guinan states that at the time McIntrye terminated her employment he stated there were "generational differences" between Guinan and Lapan and that Guinan was not a "good fit" for the office.  Guinan asserts that this statement constitutes direct evidence of age discrimination and warrants submission of this case to the jury.  <u>Alvarez Fonseca</u> v. <u>Pepsi Cola Bottling Co</u>., 152 F. 3d 17, 25 (1st Cir. 1998).  Alternatively, Guinan asserts that she has established a prima facie case of age discrimination and has demonstrated that the Defendants' proffered reasons for her termination were a pretext for age discrimination.

**A. Response to Defendants' Statement of Undisputed Material Facts and Statement of Disputed Material Facts**.

1. No dispute.  On or about December 30, 1999, Guinan submitted a letter setting forth her qualifications as well as her resume, copies of which are attached to the Guinan Affidavit as Exhibit 1.   As set forth on her letter and resume, Guinan has extensive secretarial and administrative experience, and

worked with high profile institutions. Id. Furthermore, Guinan's typing test scores reflected a 98% success rate and a 2% error rate. Guinan Affidavit Exhibit 2.

2. No dispute.

3. No dispute.

4. No dispute. Guinan interviewed with Lapan. Guinan Deposition, p. 19, a copy of which is attached to the Perkins Affidavit as Exhibit 1. She advised Lapan that she was a single parent and needed "flexibility" in order to accommodate her son's school schedule. Guinan Deposition, p. 25. Lapan assured Guinan that there would be flexibility regarding her ability to provide care for her son. Id. Indeed, McIntyre recognized that they hired Guinan knowing that she was the single mother of a seven-eight year old child. McIntrye Deposition, p. 15, a copy of which is attached to the Perkins Affidavit as Exhibit 2.

5. No dispute.

6. No dispute.

7. Disputed. Guinan offered to change her hours from 9:00 – 1:00 to 8:30 – 12:30 to accommodate McIntyre's schedule. Guinan Deposition, pp. 27-28. The hours were then changed back to 9:00 – 1:00 per Guinan's request. Guinan Deposition, pp. 27-28.

8. No dispute. In addition to the "staff," BC students worked in the office. Guinan's Answers to Interrogatories, No. 7A, a copy of which is attached to the Perkins Affidavit as Exhibit 3. Often, Lapan and the staff/work study

    students would congregate and socialize. Id. Guinan was not included in these social activities and had no social interaction with Lapan. Guinan Affidavit, para. 5.

9. No dispute. Guinan received little or no training from her supervisor Lapan when she started working at Boston College and learned her position while on the job. Guinan Deposition, p. 37. Guinan understood her job to be to simply type what McIntrye stated on the tape. Guinan Deposition, p. 37-38. Indeed, McIntrye confirmed that Guinan's job was simply to transcribe his tapes and present the draft product to Lapan. McIntrye Deposition, p. 7. Lapan's job was to edit the drafts and act as a filter between Guinan and himself. Id. at 9.

10. Disputed. Guinan asserts that the bulk of the alleged "errors" were "judgment calls." See Guinan's Answers to Interrogatories, Nos. 1, 3; Guinan Deposition, pp. 62-63; 78-79, 115. Furthermore, as recognized by both McIntrye and Lapan, Guinan was responsible for preparing a draft product to be reviewed by Lapan, returned to Guinan and then provided to McIntrye for final review and signature. McIntyre Deposition, p. 9; Lapan Deposition, p. 15, a copy of which is attached to the Perkins Affidavit as Exhibit 4. Thus, the very nature of Lapan's position required her to review the draft product. Id. Indeed, McIntyre could not detail a single "error." McIntrye Deposition, p. 10.

11. Disputed. See paragraph 10.

12. Disputed. See paragraph 10.

13. Disputed.  McIntrye could not detail a single error and relied only on Ms. Lapan's conclusion that the work was not satisfactory.  McIntyre Deposition, p. 9.

14. No dispute.  As discussed above, when Guinan was hired, it was based on the understanding that she had a young child and needed some flexibility with respect to her schedule. See paragraph 4.  Guinan acknowledges that "on occasion" she was late by five to ten minutes. Guinan Deposition, p. 46-47.

15. Disputed.  Guinan asserts that she was normally on time and was never informed that she was the only person responsible for answering the telephone. Guinan Deposition, pp. 45-46.  Furthermore, on the rare occasion when Guinan was late, she always called Christine Murphy to advise her of this fact. Guinan Affidavit, para. 6.

16. Disputed.  Guinan never came in, on a rare occasion, more than five to ten minutes late. Guinan Deposition, p 46.

17. No dispute.

18. No dispute.  See paragraph 19.

19. No dispute.  With respect to the events of August meeting and August 17th letter, Guinan disputes that the criticisms were justified and asserts that the so-called errors were judgment calls for which she unfairly criticized. See paragraph 10.  See Guinan's Answers to Interrogatories No. 1.

20. No dispute.

21. No dispute.

22. No dispute.

23. No dispute. Guinan disputes whether the "corrections," exemplified by an exclamation point on an offending letter, were justified and asserts that the matters at issue were "judgment calls." Guinan Deposition, pp. 89-90; copies of the letters Guinan typed on August 28, 2000, date are attached to the Guinan Affidavit as Exhibit 3.

24. No dispute. Given the August 17th letter, Guinan wanted to demonstrate to Lapan that she was not making mistakes but had an issue as to what McIntrye had spoken on the tape. Guinan Deposition, pp. 87-91; See Guinan Affidavit, Exhibit 3.

25. No dispute. Lapan refused to either listen to the tape or Guinan's reasoning for her typing. Guinan Deposition, p. 93-94.

26. No dispute.

27. No dispute.

28. No dispute. McIntrye, however, relied solely on Lapan's recitation of events in coming to this conclusion. McIntrye Deposition, p. 12.

29. No dispute.

30. No dispute.

31. No dispute. Again, McIntrye relied solely on Lapan's description of the incident in making his decision. McIntrye Deposition, p. 12.

32. No dispute.

33. No dispute. At the August 29, 2001, meeting McIntrye acknowledged that Guinan's so-called mistakes were "judgment calls." Guinan Deposition, p.

115. McIntrye then stated that these issues were "generational differences" and that Guinan was not a "good fit." Guinan Deposition, pp. 115-116.

34. On another occasion, Lapan told Guinan that McIntrye had said that he would have preferred to have hired a male or a clone of Lapan. Guinan Deposition, pp. 53-54. Guinan understood the reference to a clone of Lapan to mean a "young girl with no baggage." Id.

35. On another occasion, McIntrye stated "well, Monica [McIntrye's wife- had five kids and could handle it, and she can't handle one?" Guinan's Answers to Interrogatories No. 2A.

36. Guinan's predecessor, Christine Murphy, was over the age of 45 when she left McIntrye's office. Murphy Deposition, p. 6. Prior to Lapan's tenure, Murphy received favorable performance reviews. Murphy Deposition, p. 7. When Lapan began working in the office, the stress level in the office increased dramatically. Murphy Deposition, p. 10. Furthermore, Lapan gave Murphy a poor review. Murphy Deposition, p. 18. Murphy did not like working for Lapan. Murphy Deposition, p. 41.

37. In light of the stress at the McIntrye office, Murphy decided to move on and obtain another position at Boston College. Murphy Deposition, p. 18. She transferred out of McIntrye's office in July 2000 to the nursing department where she again received positive evaluations. Murphy Deposition. pp. 28-29.

38. Murphy's replacement, Carrie Alden, a woman over the age of 45, also had "stress" problems while working in McIntyre's office. Murphy Deposition, p. 30.

39. Following Guinan's termination, Boston College did not immediately post her position with the Human Resources Department, but, rather, listed the position on the Student Employment page. Guinan Affidavit, para. 7.

40. After McIntrye terminated Guinan, Lapan staffed Guinan's position using college age, work-study students. Guinan Affidavit, para. 8.

## ARGUMENT

A. **GUINAN HAS PROFERRED DIRECT EVIDENCE OF DISCRIMINATION THUS RAISING A TRIABLE ISSUE OF FACT SO AS TO DEFEAT SUMMARY JUDGMENT**

In this case, Guinan asserts that summary judgment is not warranted because she has established direct evidence of discrimination: McIntyre's statement that there were "generational differences" between her and Lapan and that Guinan was not a "good fit" in the office. Where a plaintiff offers direct evidence of discriminatory motive, a triable issue as to actual motivation is created even if the evidence is not substantial. Godwin v. Hunt Wesson Inc., 150 F.3d 1217, 1221 (9th Cir. 1998); Adams v. Corporate Realty Services, 190 F. Supp. 2d 272, 277 (D.P.R. 2001) (when direct evidence of discrimination is provided, the case may be submitted to the finder of fact without further ado.) "Direct evidence includes any statement or document which shows on its face that an improper criterion serves as a basis, though not necessarily the basis, for the adverse employment action." Fabela v. Socorro Indep. Sch. Dist., 329 F.3d 409, 415 (5th Cir. 2003). In such cases, "because of the inherently factual nature of the inquiry, the plaintiff need produce very little evidence of discriminatory motive to raise a genuine issue of fact." Lindahl v. Air France, 930 F.2d 1434, 1438 (9th Cir. 1991).

"An employer's remarks may serve as sufficient evidence of age discrimination if the offered comments are: 1) age related; 2) proximate in time to the terminations; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue." Brown v. CSC Logic, Inc., 82 F.3d 651 (5th Cir. 1996). The term "direct evidence" normally contemplates only those "'statements by a decision maker that directly reflect the alleged animus and bear squarely on the contested employment decision.'" Melendez-Arroyo v. Cutler-Hammer de P.R. Co., 273 F.3d 30, 35 (1st Cir. 2001) (quoting Febres v. Challenger Caribbean Corp., 214 F.3d 57, 60-61 (1st Cir. 2000). Thus, courts have recognized that a decision maker's adverse employment decision coupled with a contemporaneous remark which displays a discriminatory animus, is sufficient to raise a triable issue of fact with respect to an age discrimination claim. See Adams v. Corporate Realty Services, 190 F.Supp.2d 272, 277 (D.P.R. 2002)(comment that plaintiff was "too old" followed by termination sufficient to defeat summary judgment); EEOC v. Liberal R-11, 314 F. 3d 920 (8th Cir. 2002) (same) Moore v. TEK Chemical, Inc., 1999 U.S. Dist. LEXIS 11945 (D. Or. 1999)(comment that referenced plaintiff's age and said she "needed to move on" created factual issue that stated reasons for termination were a pretext); Erwin v. Potter, 79 Fed. Appx. 893, 2003 U.S. App. LEXIS 22806 (6th Cir. 2003)(employer's single statement "your too old to carry the mail" sufficient to defeat summary judgment); DeBrow v. Century 21 Great Lakes, 620 N.W.2d 836, (Mich. 2001)(remark to plaintiff by employer that he was getting "too old for this shit" accompanied by termination of employment sufficient to raise direct evidence of discrimination and defeat summary judgment); see Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 120 S.Ct. 2097, 2111 (2000)(finding

8

that age-related comments further supported jury's verdict of liability because the content of the remarks indicated "age based animus" and the speaker was principally responsible for the plaintiff's firing."); Strohn v. Associates Financial Services Co., Inc., 2001 U.S. Dist. LEXIS 14706 (N.D. Ca. 2001) and cases cited therein (incriminating statement made by individuals with decision making authority are sufficient to defeat summary judgment).

Here, at the time McIntrye (the decision maker with respect to employment decisions in his office) terminated Guinan he stated that issues between Guinan and Lapan were "generational differences" and that Guinan was not a "good fit." Fact No. 33.[1] These words clearly reference Guinan's age, i.e., her generation, her ostensible inability to interact with an otherwise younger office environment, and are followed by a contemporaneous employment decision: termination, thus satisfying the criteria set forth in Brown, supra. See Adams, supra; Moore, supra at * 25; DeBrow, supra.

The cases cited by the Defendants in support of their argument that these comments were "stray comments" are not on point as those cases dealt with comments made by either non-decision makers or decision makers not involved in the employment process. See and compare Gonzalez v. El Dia, Inc., 304 F.3d 63, 69 (1st Cir. 2002); Wallace v. OC Tanner Recognition Co., 299 F.3d 96, 100 (1st Cir. 2002). Furthermore, these "stray remarks" cases did not involve a contemporaneous employment decision. See id. Thus, based on McIntrye's comments, alone, summary judgment is inappropriate and Guinan should be permitted to present her case to the jury. See Adams, supra at 277

---

[1] . Moreover, McIntyre's prior comment stating that he wanted a "clone" of Lapan, reflect a discriminatory animus to a younger person with no baggage, i.e., children or adult responsibilities, and are consistent with his belief that "generational differences" do not fit within his office.

(when direct evidence of discrimination is provided, the case may be submitted to the finder of fact without further ado.)

> **B.   GUINAN HAS ESTABLISHED A PRIMA FACIA CASE OF AGE DISCRIMINATION**

Assuming, *arguendo*, that the Court does not find that McIntyre's statement, as detailed above, constitutes direct evidence of discrimination, Guinan asserts that she has established a prima facie case of discrimination.  Here, the Defendants claim that the plaintiff has failed to meet her burden of proof of establishing a prima facie case because: (a) the evidence shows that she did not meet her employer's legitimate job performance expectations and (b) there is no evidence establishing that she was replaced by a younger person with roughly equivalent job qualifications.

In the context of an employment discrimination case summary judgment is not a favored tool. Luciana v. Coca-Cola Enterprises, Inc., 307 F.Supp.2d 308, 317-18 (D. Mass. 2004).  In an age discrimination case arising under the Age Discrimination in Employment Act of 1967, 29 U.S.C. sec. 621 et. seq., a plaintiff may make a prima facie showing of discrimination by setting forth evidence that she:  (1) was at least 40 years of age; (2) met her employer's legitimate performance expectations; (3) experienced an adverse employment action; and (4) was replaced by a younger person with roughly equivalent job qualifications.  Vesprini v. Shaw Industries, 221 F. Supp. 2d 44.56 (D. Mass. 2002).  The requisite degree of proof necessary to establish a *prima facie* case of age discrimination "is minimal and does not even need to rise to the level of a preponderance of the evidence." Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir. 1994).  Rather, a plaintiff "need only offer evidence which gives rise to an inference of unlawful discrimination." Id.

Guinan asserts that she has raised a disputed issue of material fact as to whether she met her employer's *legitimate* performance expectations. The main focus of Guinan's position was to transcribe dictation prepared by McIntrye. Fact No. 9. Guinan was amply qualified for her position and, as demonstrated by her typing test, was a highly competent typist. Fact No. 1. After Guinan transcribed the dictation, her job was to provide the draft copy to Lapan for proofreading. Fact No. 9. Indeed, Lapan acted as a filter between McIntrye and the draft product prepared by Guinan. Fact No. 9. Thus, as part of Lapan's position was to proofread the draft copy prepared by Guinan, there was contrary to Lapan's position, room for error. Moreover, many of Lapan's criticisms of Guinan did not involve errors, but, rather, focused on "judgment calls." Fact No. 10. Guinan would listen to the tape prepared by McIntrye and transcribed what he said, she would not edit or revise his words and left this task to Lapan. Fact No. 9-10. Thus, Guinan cannot be legitimately faulted for doing her job, i.e., typing exactly what McIntrye said, or letting an occasional error slip by.

Guinan further disputes that she was "frequently late for work." The Defendants offer no records demonstrating that she was frequently late. As an initial matter, Guinan understood when she was hired that there would be some flexibility to accommodate her son's needs. Fact No. 4. Guinan, although recognizing that she may have been late on occasion, was never significantly late for work. Fact Nos. 14-16. Furthermore, on the rare instances when she was late, Guinan telephoned Lapan's assistant and reported this fact. Fact No. 10.

Guinan asserts that she has proffered sufficient facts to establish a *prima facie* case as to the requirement that she met her employer's legitimate job performance

expectations. The criticisms were unfounded and revealed an office were "generational differences" were to be prosecuted rather than accepted.

The defendant also argues that there is no evidence establishing that Boston College hired a younger person with roughly equivalent job qualifications. Here, Guinan asserts that the college used work-study students for a 14-month period while "searching" for her replacement. Fact Nos. 39-40. Clearly, the work-study students were significantly younger and likewise qualified to perform basis secretarial tasks. Given these facts Guinan has established this prong of her prima facie case.

> C. **THE DEFENDANTS' CLAIM THAT THEY TERMINTED GUINAN BECAUSE OF POOR PERFORMANCE ARE A PRETEXT FOR AGE DISCRIMINATION**

As discussed above, Guinan has both established a triable issue of fact as to direct discrimination as well as her prima facie case. Furthermore, Guinan has set forth sufficient evidence to demonstrate that the Defendants' stated decision, i.e., poor performance, was a pretext. "A plaintiff can survive summary judgment by producing evidence that creates a jury issues as to the employer's discriminatory animus or the falsity of the employer's legitimate nondiscriminatory explanation." Sandstad v. CB Richard Ellis, Inc., 309 F.3d 893, 897 (5th Cir. 2002). Again, with reference to McIntrye's statement stating that the issues between Lapan and Guinan were "generational differences" and that Guinan was not a "good fit" for the office, is sufficient evidence to demonstrate pretext. See Wilber v. Tharaldson Employee Management Co., 2005 U.S. Dist. LEXIS 27435 (N.D. Tx. 2005)(ruling statement "because of your age you have a selective memory" as evidence of pretext in termination decision predicated on performance on attitude problems). Likewise, McIntyre's

statement, as relayed by Lapan, that McIntrye wanted a "clone" of Lapan, is evidence that older persons were not treated favorably in the office and is sufficient evidence of pretext. See id; see e.g., Strohn v. Associates Financial Services Co., Inc., 2001 U.S. Dist. LEXIS 14706 (N.D. Ca. 2001) and cases cited therein (incriminating statement made by individuals with decision making authority are sufficient to defeat summary judgment).

In addition to the statements discussed above, Lapan's treatment of Guinan demonstrates that Guinan was treated unfairly because of her age. Lapan harshly criticized Guinan for judgment calls or trivial mistakes. Fact Nos. 10, 23. Indeed, Lapan had issues with other older employees. Fact Nos. 36-38. For example, she gave Murphy a poor review although Murphy had received exemplary reviews in the past and continued to receive strong reviews after transferring jobs at Boston College. Fact Nos. 36-37. Clearly, the disputed material facts demonstrate that Lapan had problems with older employees, i.e., "generational differences," and sought Guinan's termination because Guinan was not a "good fit" in the office. Indeed, Lapan recognized herself that McIntrye preferred a "clone" of Lapan, i.e., a younger person. Thus, given these disputed facts, Guinan asserts that she has raised a disputed issue of fact as to whether the Defendants' stated reason for terminating her was a pretext for intentional age discrimination.

## CONCLUSION

Guinan asserts that the disputed material facts demonstrate that there is direct evidence of age discrimination in this case, i.e., McIntyre's termination of Guinan prefaced by the statement that her problems were "generational differences" and that she was not "a good fit." Thus, the case should be submitted to the finder of fact without

further ado. <u>Alvarez Fonseca</u> v. <u>Pepsi Cola Bottling Co</u>., 152 F 3d 17, 25 (1st Cir. 1998). Alternatively, Guinan has established a prima facie case and has demonstrated, through both McIntyre's statements and Lapan's statements and actions, that she was terminated because of her age. Accordingly, the Defendants' motion for summary judgment should be denied.

                                                        For the plaintiff,
By her attorneys,

/S/ Matthew W. Perkins
Joseph T. Doyle, Jr., BBO No. 133440
Matthew W. Perkins, BBO #564868
Lecomte, Emanuelson and Doyle
Batterymarch Park II
One Pine Hill Drive, Suite 101
Quincy, MA  02169
(617) 328-1900
(617) 328-2030 Facsimile

Dated: June 21, 2006