UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DOROTHY GUINAN,                    )
    Plaintiff,                    )
                                  )
                                  )         CIVIL ACTION NO.
       v.                        )         05-10805-DPW
                                  )
BOSTON COLLEGE, JAMES P.          )
MCINTYRE, and TRACEY LAPAN,       )
    Defendants.                   )

MEMORANDUM AND ORDER
September 29, 2006

Defendants Boston College, James McIntyre (McIntyre), and Tracey Lapan (Lapan) move for summary judgment on a complaint brought by Plaintiff Dorothy Guinan (Guinan) alleging that in August 2000 Defendants unlawfully discharged her from employment based upon her age and sex[1] in violation of the Age Discrimination and Employment Act (ADEA), Title VII of the Civil Rights Act of 1969 (Title VII), and the Massachusetts employment discrimination statute, Mass. Gen. Laws ch. 151B, § 5. For reasons set forth below, I will grant the Defendants' motion for summary judgment in its entirety.

## I. BACKGROUND

### A. Facts

In August 2000, Plaintiff Dorothy Guinan was a 50-year-old woman (DOB 6/15/50) and a single mother of one son residing in Roslindale, Massachusetts. From February 2000 to August 2000,

---

[1]At the hearing in this matter, Guinan's counsel announced she was abandoning the gender discrimination claim.

Guinan worked as a part-time secretary in the Office of the
Senior Vice President at Boston College.

Defendant James McIntyre is and has been Senior Vice
President of Boston College during all times relevant to the
complaint.  Defendant Tracey Lapan, who has since married and is
also known as Tracey McDevitt, worked as an assistant to McIntyre
and as Guinan's direct supervisor during the entirety of Ms.
Guinan's employment with Boston College.

### 1. Guinan's Hiring

Guinan was hired by McIntyre for the part-time position of
"Secretary II Senior Vice President's Office Level 5."  Guinan
had submitted an application for employment through contacts she
obtained at a Boston College open house in December 1999.  Guinan
interviewed primarily with Lapan, and met only briefly with
McIntyre before she was hired.

Guinan began her job as a part-time secretary at Boston
College on February 28, 2000, with Lapan as her supervisor.
McIntyre frequently dictated correspondence and other official
business on audio tape.  Guinan's job was to transcribe the tapes
dictated by McIntyre and submit the typed product to Lapan, who
would then edit and submit the documents to McIntyre.  Guinan's
duties also included filing documents and answering telephones.
Guinan had little actual contact with McIntyre during her
employment.

At the time in question, McIntyre, Lapan, Guinan, and two work-study students comprised the entire staff of the office.

### 2. Guinan's Performance

On several occasions early on in Guinan's employment, Lapan told Guinan that she was unhappy with her performance. Specifically, Lapan criticized Guinan's work product as containing too many errors.  For example, Guinan admits that Lapan criticized her for failing to put the last zero on the year "2000," and failing to put a "Dr." in front of McIntyre's name. Guinan asserts that frequently what Lapan referred to as an error was the result of a "judgment call" that Guinan had made.  In Guinan's view, sometimes the judgments she made simply differed from the judgments that Lapan would have made under the same circumstances.  In any case, both parties agree that soon after Guinan began working for McIntyre, Lapan informed Guinan multiple times that she was dissatisfied with Guinan's work product. Lapan also regularly informed McIntyre that Guinan's work was unsatisfactory.

### 3. Guinan's Punctuality

During the six month period of employment, Guinan's hours were generally from 9 a.m. to 1 p.m. or 8:30 a.m. to 12:30 p.m. There is no dispute that Guinan was, on more than one occasion, late for work.  Defendants assert that Guinan was sometimes up to an hour late.  Guinan has claimed she was "never more than five

to ten minutes" late, although at another point in her deposition
she describes an occasion when she was fifteen minutes late.
Lapan informed Guinan that Guinan's lateness was unsatisfactory
and that Lapan expected her to be on time in order to answer
phone calls.  Guinan does not dispute that Lapan warned her about
her tardiness.  Guinan asserts, however, that she was singled out
by Lapan and that "this was not said to other people" (referring
to the warning that she was expected to be at her desk to answer
phones by 9 a.m.).  Other than this testimonial contention,
Guinan offers no evidence that Lapan or McIntyre treated her
arbitrarily with respect to her punctuality at work.

### 4. Guinan's Discharge

In August 2000, Lapan met with Guinan in order to review her
job performance.  Lapan followed up the meeting with a letter
dated August 17, 2000, summarizing Lapan's criticisms of Guinan's
work and her punctuality.  Following receipt of the letter, which
upset Guinan, she continued to transcribe tapes for McIntyre.  On
August 25, 2000, Guinan arrived at work to find that Lapan had
made some corrections to the work she had done since receiving
the letter.  Guinan went into Lapan's office personally to
discuss the corrections.  Guinan, still upset at having received
a formal letter documenting Lapan's dissatisfaction, explained to
Lapan that she thought she had transcribed McIntyre's tapes
exactly.  Guinan requested that Lapan review the tapes, Lapan

4

refused, Guinan persisted, and Lapan subsequently asked Guinan to leave Lapan's office.  Guinan then said, "Is this the way the [Boston College business school] teaches how to deal with conflict?"  The response upset Lapan, who then told Guinan that she was acting unprofessionally.

Lapan recounted the incident over the phone to McIntyre, who was out of the office that day.  Based upon this report, McIntyre spoke with Leo Sullivan, the College's Vice President of Human Resources.  Mr. Sullivan gave McIntyre permission to discharge Guinan if he felt it appropriate.  The parties do not dispute that McIntyre felt Guinan had been insulting and confrontational to Lapan, and that his decision to discuss her employment with Mr. Sullivan was due at least in part to the August 25 incident.

On August 29, 2000[2] McIntyre met with Guinan personally to discharge her.  He told Guinan that the basis for her termination was two-fold: first, that her performance had been substandard and unacceptable, and second, that her behavior toward Lapan on August 25, 2000 was insubordinate.  He sent a letter to Guinan dated September 22, 2000, confirming that she was discharged due to unsatisfactory performance.  Guinan filed a formal grievance with McIntyre's office on September 28, 2000, to which McIntyre

---

[2]The parties' statements of fact both state that this meeting occurred in 2001, which I assume is a typographical error.

responded on October 6, 2000, in a second letter reiterating the basis for her discharge.

### 5. Remarks by Lapan and McIntyre's Allegedly Age and Gender-Related

Remarks by McIntyre and Lapan constitute the whole of Guinan's evidence of discrimination:

(1) At the August 29 termination meeting with McIntyre, Guinan defended herself by claiming that her errors were merely judgment calls.  McIntyre stated that some of Guinan's mistakes were not objectively wrong and instead might have been a result of "generational differences."

(2) McIntyre stated to Guinan both during the August 29 meeting and in the October 6, 2000 letter that he believed Guinan was not a "good fit" for the office.

(3) Lapan stated to Guinan that McIntyre "would have preferred to hire a male or a clone of [Lapan]."

(4) Lapan stated to Guinan that McIntyre had remarked that "[his wife] had five kids and could handle it, and [Guinan] can't handle one?"

(5) Lapan stated to Guinan that she had remarked to McIntyre, "Who else would you expect to apply for this job except someone with mother's hours?"

Defendants do not deny having made any of these remarks to Guinan.[3]

### 6. Guinan's Successors and Predecessors

Guinan asserts, without supporting evidnce, that upon her discharge McIntyre immediately listed Guinan's position in the student employment pages.  She alleges that McIntyre hired college-aged students to replace Guinan.  Defendants disagree and assert, without themselves providing evidence, that Maureen Shea, a woman in her late 40s or early 50s, immediately replaced Guinan.  Treating the contentions (although strictly speaking in the absence of evidence, the contentions are without force) in the light most favorable to Guinan, as the non-moving party, I will assume she was replaced at least initially by students.

One of Guinan's predecessors was a 45 year old woman named Chris Murphy.  Chris Murphy testified that she was unhappy with her employment under Lapan, and that Lapan had given Murphy some negative feedback on her performance.  Another of Guinan's predecessors was Carrie Alden, a woman over the age of 45.

---

[3]Apart from questions of admissibility generally of the remarks of one individual defendant against the other individual and the institutional defendant, I note that remark (4) poses an interesting totem pole hearsay problem.  Because the parties have not addressed these issues as such, I will assume for purposes of this motion that each of the remarks is admissible against all defendants.

**B. Procedural History**

Guinan first filed a complaint with the Massachusetts Commission Against Discrimination (MCAD) on February 9, 2001 claiming that Defendants violated the ADEA, Title VII, and Mass. Gen. Laws ch. 151B.  On March 24, 2004, the MCAD dismissed her complaint, finding that Guinan failed to introduce sufficient evidence demonstrating discrimination.  A MCAD Commissioner confirmed this decision on appeal on June 30, 2004.

Guinan also filed a complaint in the Massachusetts Superior Court on July 29, 2004, alleging that Defendants violated Mass. Gen. Laws ch. 151B.  On June 10, 2005, the Middlesex Superior Court dismissed the complaint on the grounds that the state statute of limitations (3 years) barred the action.

The MCAD sent notice of Guinan's filing and her complaint to the Equal Employment Opportunity Commission (EEOC).  On February 2, 2005, EEOC notified Guinan that it adopted the MCAD's findings and that she had 90 days from her receipt of the notice to file a lawsuit alleging violations under federal law.

Guinan then filed a complaint in this court on April 22, 2005 alleging that she was illegally discharged in violation of the Age Employment Discrimination Act (ADEA), Title VII of the Civil Rights Act of 1964 (Title VII), and Mass. Gen. Laws ch. 151B.

**II. DISCUSSION**

## A. Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" if it has the "potential to affect the outcome of the suit under the applicable law." *Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 52 (1st Cir. 2000). A "genuine" issue is one supported by such evidence that a reasonable jury, drawing favorable inferences to the nonmoving party, could resolve it in favor of the nonmoving party. *Triangle Trading Co., Inc. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999). "[C]onclusory allegations, improbable inferences, and unsupported speculation," are insufficient to establish a genuine dispute of fact. *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990).

The standard for summary judgment is no different in the employment discrimination context than any other context. As the parties point out, however, summary judgment is not a "favored" tool where there are allegations of discrimination, see *Luciana v. Coca-Cola Enterprises, Inc.*, 307 F. Supp. 2d 308, 317-18 (D. Mass. 2004) because discriminatory intent is a highly fact-intensive inquiry. Nonetheless, "[e]ven in discriminatory discharge cases . . . plaintiff must point to specific facts detailed in affidavits and depositions . . . giving rise to an

inference of discriminatory animus." *Hoppner v. Crotched Mountain Rehabilitation Center, Inc.*, 31 F.3d 9, 14 (1st Cir. 1994).

**B.   Analysis**

Guinan alleges that Defendants violated the ADEA, Title VII, and the Massachusetts law prohibiting employment discrimination, Mass. Gen. Laws ch. 151B.  There is some flexibility as to the precise framework a plaintiff must follow to withstand a motion for summary judgment in the employment discrimination context. Regardless of the exact framework to apply, however, the essential question in this case is whether Guinan has presented enough evidence for a reasonable jury could find that she was the victim of unlawful discrimination.  I conclude that Guinan has not done so.  In addition, I find that her state law claim, having been fully and fairly litigated in state court, is barred under the doctrine of *res judicata*.

**1. ADEA Claim**

Guinan asserts that Defendants discharged her because of her age in violation of the Age Discrimination and Employment Act. *See* 28 U.S.C. § 623.

**a.   General Legal Framework**

The test for whether a plaintiff has provided a triable issue of discriminatory intent under the ADEA is identical to the test used in Title VII cases.

In 1973, the Supreme Court enunciated a familiar burden-shifting framework for summary judgment motions in Title VII cases. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-06 (1973). Under the *McDonnell Douglas* framework, the initial burden is on the plaintiff to establish a rebuttable presumption (a.k.a. a *prima facie* case) of intentional discrimination. The employer can then rebut this presumption by producing evidence of a nondiscriminatory reason for its employment decision. If the employer meets this burden of production, the burden falls upon the plaintiff to prove that the asserted nondiscriminatory justification was in fact a pretext for what was unlawful discriminatory treatment.

Because the language of the ADEA tracks that of Title VII, courts have since applied the *McDonnell Douglas* framework to employment discrimination cases arising under the ADEA. *See, e.g., Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000) ("This Court has not squarely addressed whether the *McDonnell Douglas* framework, developed to assess claims brought under § 703(a)(1) of Title VII of the Civil Rights Act of 1964 . . . also applies to ADEA actions . . . [W]e shall assume, *arguendo*, that the *McDonnell Douglas* framework is fully applicable here."); *Rodriguez-Morales v. Veterans Admin.*, 931 F.2d 980, 983 (1st Cir. 1991) (applying the *McDonnell Douglas* test and related cases to an ADEA claim).

11

Under the *McDonnell Douglas* framework, the plaintiff must meet her initial burden of showing that there is a *prima facie* case of discrimination. In the case of the ADEA, a plaintiff can meet this burden by showing that (1) the plaintiff was over 40 years of age; (2) "she was qualified for, and was performing her job at a level that met the employer's legitimate expectations"; (3) she was nevertheless dismissed; and (4) she was replaced by someone with roughly equivalent qualifications to perform roughly the same tasks. *See Reeves*, 530 U.S. at 142.

Defendants describe this formulation of the *prima facie* test as being the *only* formulation by which Guinan can meet her initial burden. That is debatable. The Supreme Court in *McDonnell Douglas* did not indicate that the rigid four-prong test is the sole method of demonstrating discrimination. In fact, Guinan asserts that because she has provided "direct evidence" of discrimination, there is no need to apply the *McDonnell Douglas* test at all. As Guinan points out, courts have used a different evaluative approach at the summary judgment stage when the plaintiff provides "direct" evidence instead of mere "circumstantial" evidence. *See Vesprini v. Shaw Contract Flooring Services, Inc.*, 315 F.3d 37, 41 (1st Cir. 2000).

Additionally, the Supreme Court has stated that where discrimination is apparent on its face, the *McDonnell Douglas* test is inapposite. *Price Waterhouse v. Hopkins*, 490 U.S. 228, 230 (1989) (holding that departure from *McDonnell Douglas* for purposes of jury instructions is justified where plaintiff has

presented evidence that employer relied substantially on an
impermissible factor to make an employment decision); *see also,
Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121-22
(1985) (finding that the plaintiff had presented "direct
evidence" of discrimination where an employer's policy was
discriminatory on its face).  According to *Price Waterhouse*,
where a plaintiff has provided so-called direct evidence of
discrimination, the burden shifts to the defendant to offer proof
that he was substantially motivated by nondiscriminatory reasons.
*Price Waterhouse*, 490 U.S. at 270-72.

     I must observe that the *McDonnell Douglas* and *Price
Waterhouse* tests at their foundations seem practically
indistinct.  Under both analyses, the plaintiff must first
convince the court there is at least a presumption of
discrimination.  Under both analyses, once plaintiff has met the
initial burden, the defendant has the opportunity to rebut the
presumption.  And under both analyses, the plaintiff can prevail
by demonstrating that a reasonable jury could find that the
defendant's asserted legitimate motive was in fact
discriminatory.

     I must also observe there is no satisfying legal definition
of "direct evidence" as opposed to "circumstantial evidence."
Indeed, the difference between direct and circumstantial is a
matter of degree.  *See Vesprini v. Shaw Industries*, 221 F. Supp.
2d 44, 56 n.20 (D. Mass. 2002) (providing extensive description

of lower court approaches to employment discrimination cases),
*aff'd* 315 F.3d 37 (1st Cir. 2002).

I find it unhelpful, unnecessary, and perhaps impossible to
label Guinan's evidence as direct or circumstantial.
Fortunately, the First Circuit has accepted the approach of side-
stepping the question of precisely which analytical test to apply
in the case of employment discrimination:

> The trial court [in this case] largely
> bypassed any differential direct
> evidence/circumstantial evidence tamisage,
> preferring to go directly to a finding that,
> on the totality of the evidence presented,
> [the defendant] had proven that gender
> discrimination did not trigger the firing . .
> . This approach negates any need for us to
> pursue the question of an analytic framework
> to a definite conclusion. While we agree with
> our concurring colleague that the decisional
> process is important, there comes a point at
> which slavish insistence upon process for its
> own sake serves only to exalt the trappings
> of justice over its substance.

*Smith v. F.W. Morse & Co., Inc.*, 76 F.3d 413, 421-22 (1st Cir.
1996); *see also Dominguez-Cruz v. Suttle Caribe, Inc.*, 202 F.3d
424, 430 (1st Cir. 2000) ("[T]his and other courts have
recognized the need for flexibility and have sometimes bypassed
these [direct vs. circumstantial evidence] approaches and instead
looked at whether the totality of the evidence permits a finding
of discrimination.").

Ultimately, regardless of whether the Plaintiff has followed
the protocols of the *McDonnell Douglas* framework or of the *Price
Waterhouse* framework, the sole issue is whether the record as a
whole, taking into account the plaintiff's evidence of

14

discrimination and the defendant's evidence of nondiscrimination, would permit a reasonable jury to find that Defendants based their employment decision on Guinan's age.  Following the general trend described in *Smith* and later cases, I look to the totality of the circumstances to determine whether plaintiff has demonstrated that there is a genuine issue of fact in this case, using the *McDonnell Douglas* framework as an organizing principle.

I conclude Guinan has not met her burden in establishing a *prima facie* case of discrimination.  I further conclude that if she had established a *prima facie* case, she has failed to provide evidence that Defendants' asserted nondiscriminatory reason for her discharge constituted a false pretext.  In the end, I find that no reasonable jury could conclude that Guinan was discharged due to age discrimination.

### b.  Guinan's Prima Facie Case

It is undisputed that Guinan was discharged from her employment at Boston College and that she was over 40 years old at the time of her discharge.  I have assumed that she was replaced by persons with roughly the same qualifications to perform roughly the same tasks.[4]  The only question in dispute is

---

[4] Defendants argue that to survive summary judgment on the ADEA claim Guinan must show that her successor was a significantly younger employee.  It is not necessary for the plaintiff to provide evidence she was replaced by someone much younger.  The presence of such evidence might give rise to an inference of discrimination, but the absence of such evidence is not determinative.  *See Freeman v. Package Machinery Co.*, 865

whether Guinan performed her job adequately to meet her employer's legitimate expectations.

Guinan has failed to provide evidence that she met her employer's legitimate job expectations. She asserts that she was not significantly late to work, that she believed her hours to be "flexible," and that her "errors" were merely "judgment calls." But she also admits that she was warned several times that her tardiness and "judgment calls" were unacceptable. She admits that she made true errors (e.g. typing the year 200 instead of 2000) and that she was late to work on multiple occasions. Aside from her assertions that she did her job adequately, the only evidence she provides is a copy of a letter she transcribed on August 28, 2000. The letters, which Lapan edited by hand, indicate that Guinan made several errors, only one of which was deemed to be "not incorrect" by Lapan. It certainly seems legitimate for an employer to demand that an employee charged with the duty of transcribing audio tapes make as few errors as possible. Guinan provides no evidence aside from her own allegations that Lapan's corrections were arbitrary, or that Lapan's editorial expectations were unreasonable.

---

F.2d 1331, 1335 n.2 (1st Cir. 1988) ["[R]eplacement by a younger person . . . is not an element of the plaintiff's prima facie case in an ADEA suit.") I have, in any event, for purposes of this motion credited Guinan's contention she was replaced by college students. *See* Section 1.A.6., *supra*.

Guinan also concedes she was late for work on multiple occasions and that she engaged in the August 26, 2000 encounter with Lapan that allegedly caused McIntyre to discharge her for insubordination.  There is no question that timeliness and politeness are legitimate demands of an employer, and there is no evidence in the record to the contrary.  Guinan has not proven that she met her employer's legitimate expectations.  Thus, she has failed to meet her initial burden under the *McDonnell Douglas* framework.

Even if I were not following the *McDonnell Douglas* framework, there is not sufficient "direct evidence" that McIntrye was substantially motivated by age animus when he discharged the plaintiff.  Guinan argues that five remarks are sufficient evidence of age discrimination: (1) that she was not a "good fit" for the office, (2) that she worked "mother's hours," (3) that she "couldn't handle one kid," and (4) that some of her typos might be the result of "judgment calls and generational differences," and that McIntyre's preference was for "a male or a clone of [Lapan]."  These remarks are not sufficient evidence of the presence of age animus, nor are they evidence that any age animus formed the basis for the Defendants' employment decision.

The comment that Guinan is not a "good fit" for the office is hardly evidence of age discrimination.  One can be a poor fit with an office for any number of reasons.  In fact, not being a "good fit" is likely the vaguest reason one could give for

17

discharging a person.  Guinan offers no other evidence or context to support the inference that McIntyre was referring to her age when he said this.

The remark Lapan made about "mother's hours" and the statement by McIntyre that Guinan could not handle one "kid" likewise do not support an inference of age discrimination. Lapan made the "mother's hours" remark to McIntyre while discussing Guinan's tardiness.  McIntyre seemed to make his purported remark to Lapan about being unable to "handle one" kid in the same context.  Though these remarks might be evidence of general animus toward mothers as office workers, it is not evidence of animus toward *old* mothers.  Furthermore, the two remarks were not made near in time or in context to McIntyre's employment decision.  Thus, even if the remarks showed general age animus, they do not show that the eventual employment decision was based substantially on this animus.  Similarly, the purported preference for a "clone of Lapan," which for present purposes I will treat as an oblique reference to a woman without responsibilities for children, is not relevant to an age discrimination claim.  There is no basis to support a finding that these remarks evidence that Guinan was discharged because she was over 40 years old.

McIntyre's comment that Guinan's typographical mistakes may have been the result of "generational differences" is the only comment that could arguably reflect some age considerations to the discharge.  But, in context, it is far too attenuated from

18

age animus and from the ultimate employment decision to overcome Defendants' well-founded motion for summary judgment.  McIntyre offered the "generational differences" rationalization only after Guinan pressed him to concede that some of Lapan's edits may have been subjective rather than objective.  If anything, the evidence supports an inference that McIntyre was attempting to help Guinan feel less professionally threatened by Lapan's editorial style. No reasonable jury could conclude that McIntyre engaged in age discrimination based upon his suggestion that Guinan's poor performance could be a result of "generational differences" in editorial style.  Taken either individually or together, the five remarks do not raise a genuine issue of material fact concerning age animus.

### c.  Defendants' Nondiscriminatory Reason for Discharge

Even if Guinan had established evidence that she was performing her job satisfactorily, Defendants have sufficiently met their burden in providing evidence of a legitimate, nondiscriminatory reason for Guinan's discharge.  An employer in a Title VII case bears only the burden of production in explaining the nondiscriminatory reasons for its actions, and does not bear the burden of persuading the court by a preponderance of the evidence that nondiscriminatory reasons for the challenged employment action exist.  *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981).  Defendants state, and Guinan does not dispute, that her discharge was based substantially on her insubordinate behavior.  Defendants have

19

also provided ample evidence that they believed Guinan's
performance to be inadequate.  This is evidenced not only by the
affidavits of Lapan and McIntyre, but also by a written letter
from Lapan to Guinan midway through her employment requesting
that she improve her typing performance and punctuality.  Guinan
does not dispute the fact that Defendants believed her
performance to be inadequate, that she was frequently tardy, or
that Defendants disapproved of her behavior toward Lapan.  Thus,
Defendants have clearly met their burden in putting forth a
legitimate, nondiscriminatory reason for Guinan's discharge.

### d.  Pretext/Mixed-Motive

Guinan asserts that McIntyre and Lapan's stated reasons for
discharging Guinan are merely a pretext for a discriminatory
discharge.  Guinan, however, provides no evidence of pretext
aside from the bare allegations made during her deposition.
Guinan must provide evidence beyond mere allegation that the
Defendants fabricated their asserted nondiscriminatory
justification.  *See Hoeppner v. Crotched Mountain Rehabilitation
Center*, 31 F.3d 9, 15 (1st Cir. 1994) (stating that plaintiff
cannot establish pretext solely by contesting the veracity of the
employer's action).

Even if Guinan could offer some evidence that the asserted
nondiscriminatory justification for discharge was false, Guinan
would have an additional burden to overcome to survive summary
judgment.  A plaintiff must prove a pretext for discrimination by
showing *both* that the reason was false *and* that discrimination

20

was the actual reason. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (holding that, as a matter of law, mere disbelief of an employer's asserted legitimate, nondiscriminatory reasons for its challenged actions does not entitle employee to judgment).[5]

Guinan does not provide adequate evidence that Defendants' employment decision was in fact discriminatory. The only evidence of discrimination she provides are several comments made by Lapan and McIntyre that allegedly represent discriminatory animus. As explained above, only one of these comments (regarding "generational differences") even arguably provides the basis for an inference of discriminatory intent on the basis of age, and that comment does so in such a tenuous fashion as to be insufficient. Moreover, McIntyre did not offer the statement as a reason for the discharge, but rather to concede to Guinan that certain editorial styles are not objectively right or wrong. McIntyre stated explicitly at the time of the "generational differences" comment that Guinan was being discharged because she failed to arrive to work on time, because she did not perform her job satisfactorily, and because she had been insubordinate to her

---

[5]Alternatively, plaintiff could offer evidence that Defendants had more than one motive in mind when they made their employment decision, and that age discrimination was a substantial motivating factor. *See Vesprini v. Shaw Contract Flooring Serv., Inc.*, 315 F.3d 37, 40-41 (1st Cir. 2002). Plaintiff has not presented a mixed-motive argument, however, and even if she had, she has not offered sufficient evidence to show that age discrimination was a substantial motivating factor in Defendants' decision.

supervisor.  Guinan provides no other evidence that McIntyre had
her age in mind when deciding to discharge her.  More
importantly, she provides no evidence that McIntyre's stated
reasons for discharge were in fact false.

To defeat a motion for summary judgment, "the mere existence
of a scintilla of evidence in support of the plaintiff's position
will be insufficient; there must be evidence on which the jury
could reasonably find for the plaintiff." *Anderson v. Liberty
Lobby, Inc.*, 477 U.S. 242, 252 (1986).  Guinan has failed to meet
her burden of adducing adequate evidence that she met her
legitimate job expectations.  She has also failed to provide
adequate evidence upon which a reasonable jury could find that
Defendants' nondiscriminatory motives were pretextual.

Guinan no doubt feels that her former employer's decision
was arbitrary, motivated by petty dislikes, and simply
unreasonable.  But there is no remedy for those feelings in
federal court in the absence of unlawful discrimination.  In
light of the record and the totality of the circumstances, I find
that as a matter of law Guinan has not provided sufficient
evidence to show that she was the victim of age discrimination.
Consequently, I grant Defendants' motion for summary judgment on
Count I.

## 2.  **Title VII Gender Discrimination Claim**

At the hearing in this matter, Plaintiff's counsel announced
that she was no longer pursuing the gender discrimination claim
in Count II.  This concession was well-founded.  Guinan adduces

even less evidence of sex discrimination in violation of Title VII than of age discrimination.

**3. State Law Employment Discrimination Claim**

At the hearing in this matter, Plaintiff's counsel also announced that she was no longer pursuing her state discrimination claim under Mass. Gen. Laws ch. 151B. This concession was also well-founded, because Guinan's state-law claim is barred by the doctrine of *res judicata*.

A federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the state in which that judgment was entered. *Torromeo v. Fremont,* 438 F.3d 113, 115 (1st Cir. 2006). Here, Massachusetts claim preclusion law applies. Massachusetts law prohibits "the maintenance of an action based on the same claim that was the subject of an earlier action between the same parties or their privies" where there was a prior final determination on the merits. *Bagley v. Moxley*, 407 Mass. 633, 555 (1990). Guinan initially filed her ch. 151B claim in the Middlesex Superior Court on July 29, 2004 against the same Defendants now before me. The state court granted Defendants' motion for summary judgment on grounds that Guinan's claim was barred by the statute of limitations stated in Mass. Gen. Laws. ch. 151B § 5. Guinan's state law claim has been fully and fairly litigated in state court resulting in a final determination on the merits. Consequently, I grant Defendants' motion for summary judgment on Count III of Guinan's complaint.

### III. CONCLUSION

For the reasons set forth above, I grant Defendants' motion for summary judgment in the entirety.

/s/ Douglas P. Woodlock

_____
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE